Case number 19-3079. United States of America v. Azam Doost, also known as Adam Doost, also known as Mohamed Azam Doost, also known as Mohamed Azim, appellants. Mr. Schwartz for the appellant, Mr. Meisler for the appellate. Good morning, counsel for appellant. Please begin. Good morning. May it please the court, my name is Aaron Schwartz, defendant appellant Adam Doost. The reason we are here today is because the district court sua sponte and improperly raised a statute of limitations argument which the government had waived. The district court then denied the defendant's post-trial motions based upon the same issue in which it improperly raised. The district court had no authority to raise Clause 3 of the Wartime Suspension of Limitations Act. It was not raised in the government's brief and it was not raised during oral argument on the post-trial motions. So you draw no distinction between a waiver and presenting part of an argument and adding to it? So, Judge, thank you. I think what happened is that initially the district court itself, as you said, raised Clause 3. The government initially only argued Clause 1. Um, the string of cases that I'm relying upon about the district court's authority, they talk about forfeiture and not waiver and clearly the government failing to raise it in their briefs or during oral argument and before the first opinion was released in this case, that was a waiver. And so the district court was out without authority. If it were a forfeiture, then what? If it were a forfeiture, I would refer to the Malouf versus the Islamic Republic of Iran case out of 2019 DC Court of Appeals. There are very narrow, limited circumstances in which the courts can intervene. And actually another case, U.S. ex-royal Totten versus Bombardier Corp says that the situation here, the government failing to make a number of arguments would not be an exceptional circumstance to the point where the district court could step in and essentially defeat the statute of limitations claims that we were making. Usually courts have discretion to excuse forfeitures. Why shouldn't we think of this as a question whether the district court abused its discretion? And in thinking about that question, take account of the other point Judge Rogers made, which is they did preserve a clause one argument. And frankly, there's not that much difference between these three clauses as I read the statute. So Judge, first of all, I would resort back to the fact that I think that it was a waiver that occurred. I think it's pretty clear in this circuit that an argument not raised in a reply brief is waived. And whether it was an abuse of discretion, again, there's a two-part test under Maloof. And the first is, you know, were there institutional interests of the judiciary implicated? And, you know, I don't think so. It's certainly not in a criminal case. I believe that the defendant is, you know, the most important here over, you know, judicial economy. The second part of that test is if both parties are present in litigation. And again, Maloof states that the statute of limitations exists to protect the defendant. So, you know, whether it was an abuse of discretion, I'm arguing that it completely lacked authority to intervene and basically violate the party presentation doctrine. You know, the government is supposed to submit arguments. The defendant submits arguments and the court acts as a neutral arbiter. And that didn't happen in this case. And it would have been one thing if it was an issue that was raised and maybe addressed, but this was the sole issue that the district court relied on to deny the defendant's claims, the ineffective assistance claims. And so that's why it's so important. Oh, do you want to push back on the suggestion that there's really not much difference between the three clauses? Well, the, if there, if there, so the district court held the clause one did not apply. Obviously we're not challenging that. I do think there are important differences. I think clause two addresses surplus property, real or personal property. And of course, the loan funds at issue here didn't apply, don't apply. And, you know, clause three, you know, should be narrowly construed in favor of repose. And, you know, there was no rational nexus. There was no direct connection or direct relation to the authorized use of the military forces. In your research on clause two, while I understand your point that the legislative history ties it to the surplus property act have courts limited clause two, or is there any suggestion it should be so limited? The courts that have addressed clause two, they didn't really perform a lengthy analysis. But, you know, I don't think that the statutory history should be, you know, completely ignored, you know, the Supreme courts touched on it a number of times. And, you know, it's pretty clear that clause two really only applies to military forces. And, you know, it's pretty clear that the military forces could be disposed and even given to veterans that needed, you know, certain types of property to begin farming expeditions. How do you distinguish our cases and other circuits that say money is personal property? The case I cited in my brief, I thought was pretty on point. There was a seventh circuit case as well that talks about when a statute references only money, I'm sorry, when a statute references real or personal property, that's it, that's narrowing it down. I'm trying to find the case. It was respectfully, it was a district court case in this circuit, but the case in the seventh circuit was the seventh circuit court of appeals. And I think it was, if the court doesn't mind, I can find the citation. All right. Well, when you come back on rebuttal, if you want to point us to it. Yeah, I mean, it's in the brief, but I hope that does that answer your question between the distinction of each clause in the WSLA? Yep. Okay. I understand your position. Sure. So again, it was ineffective assistance of counsel to not challenge any of the clauses. There was no case where case law research performed on either clause one or two. The trial counsel took the statute at face value and failed to recognize that there had been decades old Supreme court precedent that addressed the elements test, which the district court agreed with in clause one. Because trial counsel did not conduct a reasonable investigation, there could have been no strategic decision to not challenge the indictment as time bar. So what about counsel's explanation of how he viewed the charges and the interconnection of the wire fraud charges? Again, judge, he took the statute at face value and didn't do any case law research. I'm not sure that that is necessarily dispositive of an ineffective assistance of counsel claim. I mean, we have taken the position that if there's nothing out there, it's not necessarily a burden on counsel. Well, judge, I would point you towards the ABNY case, United States versus ABNY. The question in that was whether counsel failed to seek a benefit for his client based upon one of two reasonably likely but uncertain interpretations of a statute. And that's really what happened here. There wasn't even a challenge to begin with. And of course, the fact that we did win on the first clause shows that it was prejudicial and obviously resulting prejudice. Well, what about counsel's explanation in terms of the wire fraud counts? So initially, we did challenge the wire fraud accounts. They're not an issue here because we do concede that there's an element of fraud that would put them under Clause 1. But I think what you may be referring to is his analysis of the money laundering counts, which he relied on the specified unlawful activity of being the fraud. But of course, the elements test focuses on the statute, not what the specified unlawful activity would be. I do see I'm out of time. So if I could either reserve time for rebuttal, or I can obviously continue to answer your questions. Let me be sure my colleagues, whether they have questions they'd like to ask now. All set. Thank you. Yeah. All right. So we'll give you a couple of minutes rebuttal. Thank you very much. All right, counsel for happily. Good morning, Your Honor. May it please the court Scott Meisler from the Department of Justice on behalf of the United States. Can all members of the court hear me? Okay. Yes. Thank you so much. I'll begin. I'll address the statute of limitations issue, which, of course, we believe has to be resolved through the lens of ineffective assistance of counsel through the Strickland two-part test showing deficient performance and prejudice. And I guess I'll begin, Your Honor, with the point that Mr. Schwartz started with the waiver or forfeiture issue. We don't believe under the Supreme Court's decision in Wood v. Milliard, which is the main authority the appellant has invoked, that this amounts to a waiver in any way. Wood was a case, where the state in the habeas corpus proceeding had acknowledged in the district court the availability of a possible statute of limitations defense against habeas corpus relief and basically explicitly elected not to raise that and asked the court to resolve the issue of the case on the merits. And then the appellate court, for the first time, asked the parties to brief statute limitations and resolve the case on those grounds. This, I think, is quite different. As members of Mr. Schwartz, the government did raise the WSLA here and it raised Clause 1 at a motions hearing. The district court expressed the view that this case was perhaps best resolved under Clause 3. And when it issued its memorandum opinion, it indicated that it was not inclined to address Clause 3 without giving the defendant, Mr. Dost, a chance to brief the issue. And so this is a case As I understand the appellant's argument, and I tried to push back on this, assume it's a forfeiture. As I understand his argument, it is inappropriate, an abuse of discretion to the district court to suggest a defense that the government itself had not suggested. It cited the statute, but it wasn't relying on Clause 3. Yes, Your Honor. I don't think, if that's viewed for the abuse of discretion framework, I don't think it's the abuse of discretion at all where the court raises it, the government, and then both sides, Your Honor, have a chance to brief it. That, to me, is the main difference here. This is not a situation where the- I'm talking about the thing of counsel preparing for trial, figuring out what arguments to present, what witnesses to call, what documents to introduce. Yes, Your Honor, but I think this is- I think this is different because this, to me, seems like a legal argument under a tolling statute that's raised after trial. You don't have that issue of preparation. And again, the court, I think, ameliorated any risk of prejudice by allowing both sides to brief the issue and only deciding the question afterwards. And in fact, Your Honor, the court ultimately received, I believe, two rounds of briefing on this because it first issued an order where it held that this tolling issue was properly one for the jury, and then only on reconsideration after another round of briefing did it ultimately decide the prejudice question that turns on the construction of Clause 3 of the WSLA. So, I really don't think there's any kind of prejudice. And if the court is looking at this as a forfeiture in the court's discretion, I think the court should find no abuse of discretion in these circumstances. There may not be prejudice because everyone had a chance to brief Clause 3 after the district court raised it. But what's the justification for the district court injecting this new issue into the case? Normally, we do enforce forfeitures, and there has to be some good reason to excuse one. Well, here, Your Honor, recall the posture of this case. This is one where these are issues being raised through the lens of ineffective assistance for the first time after trial. And I think that's one distinction. And I think under a number of cases that I wish I had handy, but don't, I think this court and the Supreme Court have a number of times said, when a legal issue, a legal issue in a statute is raised before a court, the court is not usually limited to the exact arguments the party makes under that statute. This is not a situation where a court is injecting something entirely new into a case, as Your Honor mentioned. Differences may exist among the clauses in the statute, but there are times subtle, and I don't think it's outside the range of district court discretion to tee up an issue that hasn't been precisely identified by the parties, especially when the fulsome chance to address the issue. Let me ask you, let's assume preservation on both sides. So the defense timely raised limitations. So we take out the IAC overlay and you timely raised clause three as well as clause one. On those assumptions, do you disagree with the district court that on those assumptions, this issue would have been submitted to the jury? I think that's a very close and hard question, Your Honor, in light of this court's decision in Wilson that the court discussed at length. In our briefing below in response to the motion for consideration, we said that we thought the court's position on this issue was reasonable. I think it's difficult because it seems like the applicability of the statute or not is part and parcel of a statute of limitations defense, which is normally a merits defense that a jury would resolve, correct? I think it depends, Your Honor. I mean, to my mind, these issues exist kind of on a spectrum where you have, for example, withdrawal. Assuming the facts are genuinely disputed. I still think in some cases, even if the facts are disputed, the application or not of a tolling provision can, in some instances, be decided by the court pretrial, like in the Flores case from the Second Circuit that Mr. Jost decided on the fugitive tolling provision. So that's why I was saying before, I think these exist on a spectrum where you have, for example, consummation of the defense during the limitations period or withdrawal from a conspiracy that would render an indictment untimely. Those issues, I do think, go to the jury. The fugitive tolling provision, some courts have held does not. And I think Wilson makes this a harder case than maybe it would be in other circuits, right? Because here you do have a tolling provision that was a tolling agreement that involved whether certain defenses were directly related to the period of time that the defendant had waived under the tolling agreement. So I think the district court's reading of Wilson was reasonable. On the other hand, I do think that many limitations issues under the WSLA can be resolved pretrial. So if we assume that a properly raised defense along these lines would have gone to the jury, why isn't there prejudice, strickling prejudice, insofar as the defendant lost chance to have the jury decide that issue? And the district court itself told us that had the issue been properly teed up, he would have submitted it to the jury. So I think, Your Honor, that might be enough if the defendant's claim was simply that he wanted the chance to get this. Sorry, I think that might be enough, Your Honor, if the defendant's claim was these counts never should have gone to the jury, right, in the first place, because... Sorry, let me take a step back here. I think that either way you look at it, really, the district court had to resolve the question. It ultimately did in its reconsideration order. Which was, regardless of the identity of the fact finder, the identity of the decider, is there a reasonable probability that that fact finder, that decider would have resolved the question in his favor? I didn't read the order that way. I'll take another look at it. But I read it as saying that if the district court were the appropriate fact finder, he would resolve the limitations issue in your favor. That's different from saying that no reasonable jury, if given the chance, could have resolved it in the defendant's favor. I think that's right, but I don't think the no reasonable jury standard is the right one under Strickland. I think you'd have to say, is there a reasonable probability that... Reasonable likelihood. There's a reasonable likelihood that the defense would have prevailed, and we don't know. All we know on that question is what the district court said in the first order, which is that there's enough evidence on both sides to send that to the jury. Right. I think there, Your Honor, we made this comparison in our brief, in footnote 13 of our case from this court, where the question was whether an effective assistance counsel involving a duress defense, whether a defense counsel should have put on expert testimony regarding battered woman syndrome to justify essentially an instruction on duress. And this court made very clear in that scenario, it wasn't just enough to say, okay, the first step is, should you put this on to get the instruction? You also have to show in the Strickland posture, a reasonable probability that once you got to the jury, it would have resolved this in your favor. I think that to me is the right analogy here. You can't just say, should I, could I have gotten to the jury on this? The question is, if I got there, have I shown a reasonable probability that the jury would have resolved this in my favor? No, I agree with you on that. But in order to rule for the government here, we would have to find no reasonable probability that the jury would have resolved it for the defendant, correct? That's correct. And I think, and again, that's, that's on prong two, right? I think we have, we haven't, we've made an argument under prong one of the Strickland test, right? That counsel was not deficient given our construction of clause three. And of course the other arguments we've raised at raised below and raised here about clauses one and clause two. So we think we have arguments under both prong one of Strickland and prong two, just to be clear, your honor. But I think you're on the, on the prejudice question, on the question of how the jury would have resolved this. I do think the best indication is the district court's view, the district court, which presided over this trial, heard the evidence, including defense counsel's reading the statement from Colonel Britton about the importance of Mr. Dost's mining operations to stability in post-war and post-combat operation Afghanistan. The court heard that evidence was the most familiar with it. And so while the court was, as your honor correctly pointed out, explaining how it would have resolved the case, if it was the proper decider, I think that's the best metric for this court's review. I don't understand Strickland to embrace that view at all. Okay. But let me ask you, uh, what's your response to appellate's argument about clause two? About the real property versus, uh, movable property issue that one, your honor. So I think, I think that on the face of the statute, it was reasonable for defense counsel to read real or personal property as applying to money or funds, um, to take one step back your honor. Well, clearly the legislative history of that clause had nothing to do with moving money. All right. Congress had something else in mind, and I just want to understand how you move beyond that when Congress had, I knew it had all these other provisions to get at money. So I, two points, your honor. I, I think Mr. you're, you're, you're, you are correct. And Mr. Dost is correct that the original version of clause two referred solely to the certain property under the surplus property act, which perhaps would have, you know, lend itself to reading that a personal property is movable property. And this is, I'll be honest, your honor, this is not in our brief, but if you actually look at the way the statute evolved, when Congress, uh, amended the statute in 1948 to make the WSLA permanent and not just a temporary wartime measure, it actually moved the clauses around and broaden the language of what is now clause two, to its current form. And so it does not have just a reference to the surplus property act, temporary act. It instead embraces what we think on its face or as much broader language, real or personal property. And it has terms like custody or control that we think are often used to refer to money and funds the bank fraud statute, for example, your honor, 18 USC 1344 talks about custody or control. I think no one disagrees that the bank fraud statute applies to money. So we've included some cases, your honor, including the 10 circuits decision in Delia, North Carolina district court case in the third circuit case, uh, construing a federal embezzlement statute. It all use, uh, language like personal property and read that to include funds. So again, because you, the court is looking at this through the lens of ineffective assistance of counsel and ask and asking whether a reasonable lawyer, a competent lawyer looking at this case back in 2017 with a very limited body of case law could have concluded that clause two reaches this and that he shouldn't raise the objection. I think the answer is yes. And that's the framework. We think you should look at it. The court doesn't have to decide here. It doesn't have to authoritatively construe clause two to find that counsel was not ineffective for taking the statute on its face, looking at dictionary definitions like the one in black and, uh, adopting a plain language construction of clause two that is supported. We think by the case law that does exist on it. Can I ask a different question about clause two and how the three clauses relate at the end of clause three, there is this language which is connected with or related to prosecution of the war. Does that clause modify just clause three or all three clauses? Yes. The government's position, your honor, is that it modifies only clause three. Some of that drafting history I just met, I think supports that. And I should be honest, your honor, the district court decision in Nishi out of Hawaii cited by Mr. Dose, uh, reached the opposite result. The government has appealed that decision and it's being argued in the ninth circuit in January. So, I mean, that reading seems perhaps grammatically more plausible, but it would produce some seemingly astounding results. I mean, you would have to say that take, take clause one, any offense involving fraud against the United States, you would have to say there's, there's been no statute of limitations in false claims act medic Medicare claims since the AUMF. That's pretty implausible. Yes. I, well, a couple of points. It is broad. Uh, I don't think it's as perhaps as broad as your honor's suggestion, because in the Kellogg Brown and root case, the Supreme court decided in 2015, it held that, uh, the WSLA applies only to criminal offenses and not civil offenses. So in terms of civil liability under the false claims act that that's not going to be a problem, I think for, for defendants, criminal prosecution of, of a doctor for fraudulent billing of Medicare has no statute of limitations since the AUMF was enacted. Yes. I mean, so, so the, the, yes, the short answer is I haven't thought through that statute, but the government's position is that that the directly connected to language at the end of clause three applies only to clause three under the last antecedent canon. Assuming I disagree with that, then the clause two issue raises the same, same issue we've been talking about in connection with clause three, which is, um, is this, um, is this kind of, um, development project related to prosecution of the war, which may be a fairly litigable issue. Yes. I think if, if you rejected our view of the statute, then that it would, then the language would apply across clauses one and two, ostensibly if the court adopted the niche of you, I would say, of course, that hasn't been briefed, uh, here. And if the court is concerned about that in any way, then I think, then I think that that's all the more reason to look at this on prong one, right? Could, could, could, could a reasonable lawyer back in 2017, it just goes to that. That's the thought that I perhaps clumsily expressed at the beginning when I said, I thought the clauses were is that this case is not something connected to prosecution of the war. There's at least an argument that that concern covers clause two, no less than clause three, when we're assessing the lawyer's competence. Right. I'm not going to disagree with your honor on that, given the decision and Nishi and the pending appeal on the ninth circuit there. But I guess I would suggest that the defendant has conceded here. And of course the district court itself has applied a construction of clause one that would reach the major frauds and wire fraud counts here without asking whether those are directly connected to the war. Well, yeah, clause one is out of the case on different grounds on, on the elements test, but right. Those two may or may not. Right. Okay. Um, just to be clear, the, the clause that you think applies only the starting with which is connected, you're saying applies only to clause three. Does that also include the following clause or with any disposition of termination inventory? You're saying that whole thing applies only to clause three. Let me just look at the statute. You're going to give me one moment. I'm sorry. I think grammatically it would have to all apply only to clause three or all apply to clauses one, two, and three. You know, your honor, I haven't looked back candidly at the government's brief in the Nishi case, uh, to see how it handles that. And so with that appeal pending, I don't want to misspeak and misrepresent the government's position on, on that issue. Um, I can certainly get the court a letter or I can refer the court to the Nishi case, which is 19 one Oh four Oh five. And again, I think because part of our argument there depends on the enactment history of the statute. I actually just don't recall your honor, whether that piece of the statute was part of the original version or was added in some, in the order I mentioned in the 1948 codification, the court has no further questions. We would ask the judgment below be affirmed. Um, where we're talking about multiplicity in the false statement counts and you're discussing men, Jerry, but you're saying by analogy, this is quoting your brief that makes the unit of prosecution in a section 2197 end case, such as this one quote, the induced illegal transaction, not the made falsehood end of quote, what does the phrase such as this one mean? In other words, the basic question is, is what is the limitation? And that seems to be the limitation you're suggesting. And I'm not sure I know what that means. Your honor. I think what, if I'm remembering correctly, your honor, I think I was just trying to capture the notion there, your honor, that mongerie had, um, mongerie itself had announced kind of a general rule in the duplicity context for false statements under 1014 under 18 USC 1014, and then said it didn't foreclose the possibility that under some circumstances, I know multiple as this one. All right. What I'm getting at is the district court followed the 10th circuit. Yet we have a and the district court really didn't discuss that in addressing the multiplicity argument, rather, he looked to, um, the terms of the loan. And you don't pick that up in your brief. And that's why I'm trying to understand what does the government think is the limitation here? Sorry, on the limit, the limitation on multiplicity, right? So I think your honor, our view is that this is a different case than mongerie because each of the fraudulent representations, even though they were in the same disbursement request under the loan, triggered a payment in a different amount to a different payee in a different country. Well, we think that I'm just, I want to be clear. That could mean every dollar, you know, if in every hundred dollars disperse the different vendors. Um, but I thought your reference on page 41 was trying to draw some way of limiting what was going on here. And I thought maybe it was a reference to the terms of the loan itself. I don't know. That's why I'm trying to understand. Yeah, no, I take, I take your point. Your honor, I would distinguish, um, the two different multiplicity arguments. I do think on the first multiplicity argument regarding the major fraud counts, but the terms of the loan itself is very important. The district court itself focused on that and the indictment did too. And I would point your honor to paragraph, uh, page, uh, eight of the appellants appendix paid a paragraph for a Mr. Dost highlights that I'm looking at the indictment. Um, that's on my copy appendix 14. This is a pellet. Yes. So the, the, uh, at page 14 of the version I'm looking at your honor, the addresses, the money laundering counts, which I think are not part of the, as I understood, is not part of the multiple city challenge. It, the multiple city challenge concerns the accounts above that false statements. Exactly. Your honor that for me, that is at least for me, that's on page, um, I guess that's a page top of page, um, 13. Yes, exactly. And so right. And so our view in those is yes, they are within the same disbursement requests. And so under Mungeri, um, right. Those could potentially under Mungeri, those could be properly, uh, included in a single count. Now that would raise the question, right. Of whether the defendant would be entitled to a specific unanimity instruction to ensure that, uh, it, this is obviously in the hypothetical world where this is in one count to ensure that jurors unanimously agreed on which false statement they found Mr. Dost to have knowingly made. In other words, underlying point of my questions is it seems to me that this circuit and the 10th circuit have taken somewhat different approaches toward this question. And in Bruce, we cited cases that suggest that, um, the way the 10th circuit is viewing this, it's not the way we would view it. And I'm trying to understand, and I know the district court applied the 10th circuit approach, uh, is how this argument fits within our circuits view. And of course, as you point out, uh, everybody's arguing by analogy to a banking statute, but still. Right. So I think your honor, I tried to say this earlier and I'm not sure if I was clear about it, but I wanted to distinguish between the false statements count that your honor is just looking at in the indictment there. That is a case where I think the court did apply Manjiri directly, right? And footnote 12 of Manjiri, the court, when it said, we're leading up with open the possibility that in some cases, two false statements in a single document can be two counts cited to a fifth circuit case. I think there's round and round and round. My question is what does the government mean when it says such as this one, right? No, Manjiri left it open, but what is it? Yeah, I think I was just trying to say, your honor, that just like this court we're not trying to, we're not suggesting that there is necessarily an across the board rule that multiple false statements in a single disbursement request can be always be, or can never be. That's what we understood Manjiri to say. We think the district court reasonably resolved that. I don't want to leave your honor confused about this. The 10th circuit issue is the argument of the government that where the loan itself calls for transactions that are discreet, that is not volative of the multiplicity approach. In other words, in Bruce, we cited a case where somebody owed taxes over a 12 year period. So every year, you know, he didn't pay his taxes. Well, that's just a course of conduct. So the argument here is that he took out this loan and he didn't pay it back. Right. So I think that is an area, your honor, I think the district court did follow Bruce. Yes, it looks at the 10th circuit as I think a helpful summary of what factors the courts have looked at in the bank fraud context, analogizing to major frauds cases. But what did Bruce say? Bruce said, like you said, your honor, look at the indictment. And I was trying to point your honor to a couple pages ahead of where you were looking. Because I think a couple pages ahead of there, you'll look and this is on page for me, this is page eight of the appendix under manner and means of the scheme and artifice. It's paragraph 4a, where it says Dost and others would obtain a 15.8 million dollar loan from OPEC. That's a single loan right for development and maintenance of the marble mine. Thereafter, Dost and others would submit requests for disbursement of loan funds to cover alleged reimbursable costs of the marble mine. So I think the way the indictment describes the scheme is not as this single act of fraud in the inducement. It's continued fraud, not just a course of conduct. Bruce was concerned about notice to the defendant. That's why I'm on page 13, as opposed to this general statement, which could simply be this was a single transaction, a single loan from OPEC. Right. And I think your honor, and I think before we get to page 13 on page 10, the box at the top sets forth these counts, right in enumerated accounts, one, two and three different dates, different amounts of money. And right above that says to wit, Dost and his consultants submitted to OPEC via email or in person, three disbursement requests. So if you can, you look at the way the indictment is structured, both in the allegations and the actual enumeration of counts. And of course, other factors, the district court considered, right, that Mr. Dost is signing a new promissory note for each disbursement request. He's therefore and he has therefore has a new new and different obligation to be truthful. And to take one step back, your honor, I think this is quite different than a case. You can imagine a case in which Mr. Dost lied to OPEC in his loan application and said, you know, he misrepresented the collateral or his ability to raise matching capital contributions, which was a condition of the loan. But then when it came time to submit the reimbursement requests, he was scrupulously honest on an April, July, December, scrupulously honest. That would be a one count case because he had another occasions to be dishonest. The actual financial risk and flow of money out of OPEC's multiplicity is, I think, in these scheme cases, very fact specific. We think the district court correctly applied kind of consensus principles from Bruce and other circuits law. And again, because we're looking at this through the lens of ineffective assistance of counsel, you also have to ask, was counsel unreasonable, objectively unreasonable, would no competent lawyer have would have failed. That's the test for Primo versus Moore. Anything further on my colleagues? No, thank you. Thank you, counsel. Thank you. Counsel for appellate. We'll give you two minutes. Thank you. Thank you very much. So quickly, I would I would just like to point court to what I believe the correct standard of prejudice to apply in this case out of the Mohammed case, USB Mohammed. And that is in assessing the prejudice. The ultimate question is whether the defendant has shown a reasonable probability and then adequate investigation. In this case, it was case law and bringing to the attention of the time bar charges could have enabled trial counsel to so sufficient doubt to sway one juror. So it's not collectively what a jury would have done. It's does the evidence sway one juror? And I think that's your brief on the on the timeliness point focuses primarily on the prejudice problem. Can you speak to the deficient performance to the first prong of Strickland with respect to timeliness? Just timing is timeliness. I think I talked about it a little bit in Abney. You know, looking at a statute that has reasonable interpretations going either way and failing to raise that statute that that would fall underneath the Abney case, which, of course, found deficient performance. And I think the exact wording in that case was the failure to act on a reasonable probability and probable interpretation of a statute that could benefit the client again. And Mohammed expands on that and says, you know, only when such a reasonable investigation in this case, case law research at all. You know, you have to inform yourself in order to make a strategic decision so that that, again, goes to the deficient performance. And I think the U.S. Supreme Court talked about it versus Alabama, 571 U.S. 274. And that's that's an attorney's ignorance on a point of law, which is fundamental to his case, combined with failure to perform basic research. But that's actually the exact wording in that is unreasonable performance under Strickland. And I guess very quickly, I'll touch on the multiplicity issues, which I guess are prevalent in both the false statement and obviously the major fraud counts. The Bruce case was obviously correctly stated, and I believe that's the binding case here. There was a single scheme to defraud. It was the same victim, the same bank, and the same methods were used. And that's exactly what has happened in this case. And, you know, we talked about the Tenth Circuit briefly. The Reitmayer case, I think, is also controlling, even though they have a differing standard. That what happened in that case is there was a claim for false payment initially made, and then there was a subsequent meeting where they made the same misrepresentations to garner the same amount of funds. So the financial risk was not new and there wasn't a separate set of funds. And that's exactly what happened here. The loan was approved and there were shell, you know, the alleged shell companies in this case had been created prior to the approval of the loan in our case. And he had alleged to have already received loans from other government agencies to fund the same equipment that he got from the OPIC loan. So, you know, the scheme was when the loan funds were approved. That is when the funds could no longer be used for any other loan applicant. And this circuit holds that that is when it is executed. And the disbursement requests were plainly just in furtherance of the scheme. So with that, I would ask the court to dismiss the time-barred counts, dismiss the multiplicitous counts, and award a new trial based on ineffective assistance of counsel. Thank you very much. Thank you. We'll take the case under advisement.
judges: Rogers, Katsas, Rao